IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ROBERT and DEBRA GLIBOWSKI,

    Plaintiffs,

v.                                              No. 09-CV-1039 MCA/KBM

UNITED STATES OFFICE OF
PERSONNEL MANAGEMENT,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on *Plaintiffs' Motion for Reconsideration of the Opinion Entered 9/20/06* [Doc. 66]. The Court has considered the parties' submissions, the relevant law, and has otherwise been fully advised in the matter. For the following reasons, the Court hereby **DENIES** the *Motion*.

## BACKGROUND

The parties are familiar with the background of this case, and thus the Court will not address it in detail. In short, Plaintiffs, a married couple, were aggressively treated for Lyme disease by Dr. Carol Ann Ryser in 2006 and 2007. [Doc. 23, pp. 5-7, 17] Their insurance carrier, and subsequently the Office of Personnel Management (OPM), denied payment for many tests and treatments ordered by Dr. Ryser on the grounds that they were not medically necessary. [Doc. 23, p. 2] This Court entered a *Memorandum Opinion and Order* in December, 2013, in relevant part concluding that OPM failed to state why it rejected the aggressive treatment Plaintiffs received for Lyme disease, which

1

was consistent with International Lyme and Associated Diseases Society (ILADS) Guidelines, which were a part of the record. [Doc. 23, p. 60] Absent from the record was evidence supporting the conclusion that Plaintiffs' tests and treatments did not meet the criteria for being medically necessary, i.e., that they were inconsistent with standards of good medical practice in the United States. [Doc. 23, pp. 60-61] Accordingly, the Court remanded the case to OPM for OPM to "develop a record which indicates the standards of good practice in the United States in sufficient detail to make an informed, reasoned decision about whether or not Dr. Ryser's treatment conformed to that standard." [Doc. 23, p. 61]

In October, 2015, OPM issued its second Final Decision, again denying benefits for many treatments as not medically necessary. Plaintiffs filed a *Motion to Enforce*, and argued that the October 2015 Final Decision did not comply with the Court's December 2013 *Memorandum Opinion and Order*. [Doc. 45; Doc. 49] The Court granted-in-part and denied-in-part Plaintiffs' *Motion to Enforce* on September 20, 2016. [Doc. 65] On October 17, 2016, Plaintiffs filed the present *Motion for Reconsideration of the Opinion Entered 9/20/2016*. [Doc. 66] Additional background, as necessary, is set forth below.

## ANALYSIS

### *Standard of Review*

Rule 59(e) provides for motions to "alter or amend" a judgment if the motion is filed within twenty-eight days of the judgment. Fed. R. Civ. P. 59(e). Although a final judgment consistent with Rule 58 was not entered in this case, Plaintiff's *Motion* is properly considered under Rule 59(e) because the *Memorandum Opinion and Order* at

issue disposed of all issues and remanded the case. [Doc. 65, p. 32] *See Wagoner v. Wagoner*, 938 F.2d 1120, 1122-23 (10th Cir. 1991) (holding that, though the Court had not yet entered a judgment, a motion to reconsider an order that "dismissed plaintiff's complaint with prejudice" was "properly deemed filed pursuant to Rule 59(e)"); *Hilst v. Bowen,* 874 F.2d 725, 726 (10th Cir. 1989) (stating that a motion to alter judgment may be filed under Rule 59 "before a formal judgment has been entered" under Rule 58); *but cf. Trujillo v. Bd. of Educ. of Albuquerque Pub. Sch.*, 212 F. App'x 760, 765 (10th Cir. 2007) (unpublished decision) (stating that the district court has the discretion to revise its interlocutory rulings, including an order granting summary judgment for the last remaining defendant, prior to entry of a judgment, without applying the stricter standards of Rule 59(e)).

"Rule 59(e) relief is available in limited circumstances, including [when there is] '(1) an intervening change in the controlling law, (2) . . . new evidence previously [which was] unavailable, and (3) the need to correct clear error or prevent manifest injustice.'" *Hayes Family Trust v. State Farm Fire & Cas. Co.*, 845 F.3d 997, 1004 (10th Cir. 2017) (quoting *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)). "[A] motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law. . . . It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Servants of the Paraclete*, 204 F.3d at 1012 (internal citations omitted).

***Discussion***

3

Plaintiffs primarily argue that OPM did not fulfill its duty, as set forth in *Gunderson v. United States Department of Labor*, 601 F.3d 1013, 1022-23 (10th Cir. 2010), to provide an analysis and reason for favoring one scientific theory over the other. [Doc. 66, p. 3] In particular, Plaintiffs argue that OPM's October 2015 Final Decision "completely fails to mention the opposing view, particularly the updated 2014 ILADS Guidelines." [Doc. 66, p. 3] Plaintiffs argue that the "Court should have required OPM to discuss the two competing approaches to IV [intravenous] treatment of Lyme disease." [Doc. 66, p. 4]

This argument simply rehashes an argument Plaintiffs made previously. In their *Reply* brief, Plaintiffs argued, *inter alia*, that OPM "refuses to acknowledge the existence of chronic long-term Lyme disease or the ILADS Guidelines, and therefore the medical necessity for the testing or treatment of any such disease." [Doc. 49, p. 4] Accordingly, Plaintiffs' argument in the present motion is an inappropriate attempt to "revisit issues already addressed," and thus this argument is not a basis for relief under Rule 59(e). *Servants of the Paraclete*, 204 F.3d at 1012.

Plaintiffs argue that OPM "failed to even include or mention the submittal of the significant, published, highly researched [ILADS] Guidelines, which <u>replaced</u> the IDSA [Infectious Disease Society of America] guidelines, upon which OPM relies, at the National Guidelines Center." [Doc. 66, p. 6] Plaintiffs submit that they sent OPM a document identifying a link to the ILADS Guidelines on September 25, 2015. [Doc. 66, pp. 3-4; Doc. 66-1, p. 3] Though Plaintiffs made this argument prior to the Court issuing its *Memorandum Opinion and Order*, the Court did not address the argument and thus the

Court will construe this argument as one falling within the category of being made "to correct clear error or prevent manifest injustice." *Servants of the Paraclete*, 204 F.3d at 1012.

*Gunderson* sets the standard which OPM was required to meet in determining whether the treatments were medically necessary. *Gunderson*, 601 F.3d at 1022. "[C]ourts generally afford [deference] to agency action that implicates scientific and technical judgments within the scope of agency expertise. . . . They have a corresponding obligation to use that skill when evaluating technical evidence." *Id*. (internal quotation marks, citations and emphasis omitted). "[C]oncomitant with the [Administrative Law Judge's] duty to resolve all conflicts in the medical evidence is the responsibility to provide some general articulable basis for rejecting certain key medical evidence that favors or disfavors an award of benefits." *Id*. (internal quotation marks and citations omitted).

Plaintiffs' argument is not persuasive. First, though OPM does not cite the ILADS Guidelines, OPM addressed the two competing approaches. Thus, it is clear that OPM considered the *content* and *recommendations* of the ILADS Guidelines. Moreover, OPM stated its reasons for not finding the medical care at issue to be consistent with standards of good medical practice by identifying the good medical practice, i.e., the IDSA Guidelines. OPM's final decision stated, in part (the full analysis is set forth in the Court's September 20, 2016 *Memorandum Opinion and Order* [Doc. 65]):

> The concept of chronic Lyme disease has been extensively investigated and confuted. For a number of reasons, the provider's plan to treat with IV antibiotics contravenes the preponderance of scientific data and falls

> outside the current standard of common accepted practice. There is no evidence that this patient has a condition for which IV antibiotics are indicated. According to generally accepted, evidence-based, up-to-date guidelines published by the Infectious Diseases Society of America (IDSA), indications for parenteral antibiotics for patients with Lyme disease include meningitis or radiculopathy, atrioventricular heart block and/or myopericarditis, and may be considered for arthritis. Based upon the information provided, the patient does not appear to have any of these conditions. Moreover, there is not sufficient scientific data to support the use of antibiotics beyond twenty-eight days, nor is there scientific data to support the continuation of antibiotics until the resolution of symptoms. This injudicious use of antibiotics is unlikely to provide any real therapeutic benefit, unnecessarily exposes the patient to the risks associated with prolonged intravenous access and prolonged exposure to antibiotics, and contributes to the emergence of antibiotic resistant organisms.
>
> Although Dr. Ryser and other "Lyme literate" physicians are critical of the IDSA guidelines, it is worth noting that the guidelines for the diagnosis and treatment of patients with Lyme disease have been scrutinized by members of an independent medical review panel and found to be "medically and scientifically justified" with no changes recommended.

[Doc. 65, p. 11; Doc. 46-1 (footnotes omitted)] Thus, without expressly naming them, OPM rejected the ILADS recommendations (both the recognition of the "concept of chronic Lyme disease" and administering antibiotic treatment for longer than 28 days) and stated its reasons for doing so: the scrutiny of "an independent medical review panel" and evidence from "four National Institutes of Health-sponsored antibiotic treatment trials" which concluded that "retreatment provides little if any benefit and carries significant risk." [Doc. 65, pp. 11-12; Doc. 46-1, p. 4] Finally, OPM cited not only the IDSA guidelines, issued in 2006, but a peer reviewed article "revisit[ing]" the guidelines, published in 2013. [Doc. 65, pp. 11-12]

Having identified the evidence on which it relied to conclude that Plaintiffs' treatments were not medically necessary, OPM complied with the dictates of *Gunderson*, and thus, in turn, this Court's 2013 *Order*. By addressing the aggressive Lyme disease school of thought generally, OPM's decision considered all important aspects of Plaintiffs' argument. *See also Surgicore v. Office of Pers. Mgmt.*, 2006 WL 733548, at *7 (N.D. Ill. Mar. 21, 2006) ("[A]n agency acts arbitrarily and capriciously when it entirely fails to consider an important aspect of the problem." (Internal quotation marks, citation and brackets omitted)). OPM's expert medical reviewer demonstrates that he or she is familiar with the up-to-date research in his or her field. OPM and its reviewer did not, as Plaintiffs suggest, have the duty to refute every contrary medical article, or even those specifically identified by Plaintiffs. OPM merely had the duty to identify the standards of good medical practice in the United States and sufficient support for those standards for the Court to be able to trace OPM's reasoning. In sum, OPM's decision resolved the "scientific dispute on scientific grounds" and OPM "provide[d] support for favoring one opinion over another." *Gunderson*, 601 F.3d at 1022-23 (internal quotation marks and citation omitted).

Furthermore, Plaintiffs did not timely submit the evidence of the 2014 ILADS Guidelines to OPM.[1] In September, 2015, Plaintiffs sent a letter with the "link" to the

---

[1] Though Plaintiffs' counsel's letter states that the ILADS Guidelines were "updated and published" in September of 2015, [Doc. 66-1], Plaintiffs' own attachment identifies the document as being published online on July 30, 2014. [Doc. 66-1, pp. 5, 6] In addition, though Plaintiffs submit that the ILADS Guidelines update and replace the IDSA guidelines, Plaintiffs' documentation supports a conclusion that the 2014 ILADS guidelines replace the 2004 ILADS guidelines. [Doc. 66-1, p. 6 (stating that the

2014 ILADS Guidelines to OPM. [Doc. 66-1] However, OPM had asked Plaintiffs to submit all evidence which "rebut[s] the findings or provide any additional information not previously submitted or reviewed" by July 14, 2015.[2] [Doc. 59-3, p. 23]

Finally, with regard to the 2014 ILADS Guidelines, under the circumstances of this case the Court is not willing to hold that OPM acted arbitrarily or capriciously by analyzing medical necessity under the best medical evidence available at the time of treatment, 2006 and 2007, rather than contradictory guidelines that were published over six years after the treatment was administered.

Thus, for the above reasons, it was not erroneous for OPM to fail to reference the 2014 ILADS Guidelines in its 2015 Final Decision.

Plaintiffs also argue that OPM failed to discuss forty "referenced articles sent by Plaintiffs in June, 2015." [Doc. 66, p. 6] Again, however, OPM need not discuss every medical research article contrary to its conclusion. Instead, the Court must be able to determine why OPM reached the conclusion that it did – and, as discussed above, the Court is able to do that on this record.

Finally, Plaintiffs' counsel disputes that he "admitted," as argued by Defendant, that a CD-ROM of unknown origin "was in fact prepared by his clients," [Doc. 55, p. 2], while nonetheless acknowledging that he is "not sure" where the CD-ROM came from

---

guidelines "replace those issued in 2004 (Exp Rev. Anti-infect Ther 2004;2:S1-13); Doc. 59-15, p. 48 to 59-16 p. 6 (the 2004 ILADS Guidelines, Expert Rev. Anti-infect. Ther. 2(1), (2004))]

[2] Further, on February 4, 2015, prior to submitting the record to the medical reviewer, OPM asked Plaintiff for "any additional documentation" by March 6, 2015. [Doc. 59-8, p. 12]

and that "it is likely that Plaintiffs actually prepared it." [Doc. 66, pp. 1-2] This argument is irrelevant because: 1) the Court's reasoning in the September 2016 *Memorandum Opinion and Order* addressed several reasons for disregarding the CD-ROM, irrespective of Defendant's claim that Plaintiffs' counsel "admitted" that his clients prepared the CD, and, moreover, 2) even if this argument were persuasive, it is not a basis for reconsideration as set forth in *Servants of the Paraclete*, 204 F.3d at 1012.

In sum, Plaintiffs' have not persuaded the Court that the Court's September 20, 2016 *Memorandum Opinion and Order* should be reconsidered.

**CONCLUSION**

**WHEREFORE,** for the foregoing reasons, the Court hereby **DENIES** *Plaintiffs' Motion for Reconsideration of the Opinion Entered 9/20/16*. [Doc. 66]

**SO ORDERED**, this 22nd day of September, 2017 in Albuquerque, New Mexico.

_____
M. CHRISTINA ARMIJO
Chief United States District Judge